**Opinion issued November 7, 2017**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

## NO. 01-16-00664-CR

_____

**JOHNNY MELCHOR MACIAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Case No. 1481127**

---

## O P I N I O N

A jury convicted appellant, Johnny Melchor Macias, of the third-degree felony offense of indecency with a child and, after appellant pleaded true to the allegations in two enhancement paragraphs, assessed his punishment at thirty-five

years' confinement.[1]  In three issues, appellant contends that (1) his trial counsel rendered constitutionally ineffective assistance of counsel when he failed to object to the forensic interviewer's testimony concerning the credibility of the child complainant; (2) the record does not demonstrate that the visiting judge who presided over the trial took the constitutionally-required oath of office; and (3) the $80 in court costs assessed against him for "summoning witness/mileage" is unconstitutional as applied to him because it violated the confrontation clause and the right to compulsory process.

We affirm.

## Background

Appellant and L.P. dated for over thirteen years, and they had four children together, including the complainant, D.M., who was fourteen years old at the time of trial.  By the summer of 2014, appellant and L.P. had ended their relationship, but their children still saw appellant.  On June 16, 2014, when D.M. was twelve years old, L.P. left her children alone with her cousin, and when she returned to the house she found D.M. in tears.  D.M. told L.P. that her cousin had said inappropriate things to her and had made her feel uncomfortable, but D.M. kept crying and eventually told L.P. that "two other people . . . were inappropriate with her."  D.M. told L.P. that her eighteen-year-old cousin was exposing himself to her and that her father,

---

[1]     *See* TEX. PENAL CODE ANN. § 21.11(a)(2) (West 2011).

appellant, "was exposing himself to her and was trying to get her to touch him." L.P. testified that she had never heard anything about appellant's touching D.M. inappropriately other than his attempting to force her to touch him. L.P. immediately called the police. In September 2014, L.P. took D.M. to the Children's Assessment Center for a forensic interview and a medical exam.

Initially, the State charged appellant solely with the offense of indecency with a child by exposure. D.M. met with the prosecutor in June 2016, and, as a result of this meeting, the State also charged appellant with the offense of indecency with a child by contact.

Appellant's trial was presided over by the Honorable Reagan Clark, a retired district judge who had taken senior status and was sitting by assignment. The record does not reflect that appellant ever objected to Judge Clark's presiding over his trial, and he never raised any complaint in the trial court concerning Judge Clark's qualifications.

D.M. testified at trial that, in June 2014, she told L.P. that appellant was touching her and exposing himself to her. D.M. could not remember the exact age that she was when appellant began acting inappropriately with her, but she estimated that she was around seven years old. D.M. testified that she would be in the living room watching television with her brothers and sister, and appellant would call her into his bedroom, close the door, and expose himself to her. She stated that appellant

3

would grab her hand and try to make her touch his penis. D.M. also testified that appellant would reach underneath her shirt and touch her breasts and he would touch her vagina, both over and underneath her clothes. D.M. testified that this behavior occurred for years and did not stop until appellant had begun dating his current girlfriend.

Erika Gomez conducted D.M.'s forensic interview at the Children's Assessment Center. Gomez testified that D.M. spoke with her about an incident involving her father. Gomez and the State then had the following exchange:

| | |
|---|---|
| [The State]: | Again, without going into detail as to what [D.M.] told you, at some point you end the interview; is that correct? |
| [Gomez]: | Yes. |
| [The State]: | Now, during your interview with her, did you find her to be credible in what she was telling you? |
| [Gomez]: | Yes. |
| [The State]: | When your interview was over, did you find her to be consistent with what she told you in the interview room, with what she had told police officers and what you had learned during your staffing process? |
| [Gomez]: | I cannot recall the staffing. So, I don't know, per se, what the law enforcement said. So, I can't recall. |
| [The State]: | That's fair. But you found her to be credible when you were done; and after you spoke with police officers, you had no reason to disbelieve she was a credible little girl? |
| [Gomez]: | Yes. |

Defense counsel did not object to this testimony.

4

On cross-examination, Gomez testified that D.M. did not report that appellant had touched her inappropriately. Gomez also testified that "[i]t's not [her] job to say whether a child is lying or telling the truth" and that she has had occasions where she believed a child was lying to her during an interview and occasions where she could not tell if a child was lying. When asked how she can tell whether a child is being truthful, Gomez responded: "Consistency. The details, the sensories. A lot of it goes into the sensory details. And if more than one time the child is able to detail more than one time and it is different, you know, something different was said or something different was done." Defense counsel asked Gomez how she could determine if consistency existed when she does not view police reports before conducting forensic interviews, and Gomez stated, "Because the child narrates to me everything that has happened to him or her and they're able to take me through different times."

Dr. Marcella Donaruma, the attending physician at the Children's Assessment Center, met with D.M. Dr. Donaruma testified that D.M. disclosed to her that appellant had exposed himself to her and tried to make her touch his penis. Dr. Donaruma asked D.M. if appellant had ever touched her inappropriately, and D.M. responded, "No." Dr. Donaruma did not conduct a physical exam of D.M.

Appellant testified on his own behalf. He testified that he did not have a good relationship with L.P. after they separated, and L.P. usually spoke with his girlfriend,

5

instead of him, over matters concerning their children. Appellant testified that he first learned about D.M.'s allegations against him in 2015 when Child Protective Services called him for an interview. He stated that he cooperated with their investigation and with the police investigation. He testified that D.M.'s allegations were not truthful, and he denied exposing himself to D.M., trying to make D.M. touch him, or touching her.

Ultimately, the jury found appellant guilty of indecency with a child by exposure, but it was unable to reach a verdict on the charge of indecency with a child by contact, and the trial court declared a mistrial as to that charge. After appellant pleaded true to the allegations in two enhancement paragraphs, the jury assessed his punishment at thirty-five years' confinement.

After the trial court signed the judgment of conviction, a total of $759 in court costs was assessed against appellant, which included $80 for "summoning witness/mileage." Appellant did not file a motion for new trial or other post-judgment motion. This appeal followed.

## Ineffective Assistance of Counsel

In his first issue, appellant contends that his trial counsel rendered ineffective assistance during the guilt-innocence phase of trial when Gomez, the forensic interviewer, twice testified that she found D.M. to be credible, but trial counsel did

6

not object.  Appellant further contends that this testimony constitutes fundamental error.

## A.    *Standard of Review*

To establish that trial counsel rendered ineffective assistance, an appellant must demonstrate, by a preponderance of the evidence, that (1) his counsel's performance was deficient and (2) there is a reasonable probability that the result of the proceeding would have been different but for his counsel's deficient performance.  *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010); *Cannon v. State*, 252 S.W.3d 342, 348–49 (Tex. Crim. App. 2008).  The appellant's failure to make either of the required showings of deficient performance or sufficient prejudice defeats the claim of ineffective assistance.  *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012) (quoting *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069).

The appellant must first show that his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms.

7

*Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The second prong of *Strickland* requires the appellant to demonstrate prejudice—"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and, therefore, the appellant must overcome the presumption that the challenged conduct constituted "sound trial strategy." *Id.* at 689, 104 S. Ct. at 2065; *Williams*, 301 S.W.3d at 687. Our review is highly deferential to counsel. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To prevail on an ineffective assistance claim, the appellant must provide an appellate record that affirmatively demonstrates that counsel's performance was not based on sound trial strategy. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Thompson*, 9 S.W.3d at 813 (holding that record must affirmatively demonstrate alleged ineffectiveness). In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Mallet*, 65 S.W.3d at 63. Because the reasonableness of trial counsel's choice often involves facts that do not appear in the appellate

record, the Court of Criminal Appeals has stated that trial counsel should ordinarily be given an opportunity to explain his actions before a court reviews the record and determines that counsel was ineffective. *See Rylander*, 101 S.W.3d at 111; *Bone*, 77 S.W.3d at 836. However, when no reasonable trial strategy could justify counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects counsel's subjective reasons for acting as he did. *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

**B.      *Failure to Object to Testimony Concerning Credibility of Complainant***

To be admissible, expert testimony must "assist" the trier of fact. *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997); *see* TEX. R. EVID. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."). Expert testimony must aid, but not supplant, the jury's decision. *Schutz*, 957 S.W.2d at 59. "Expert testimony does not assist the jury if it constitutes 'a direct opinion on the truthfulness' of a child complainant's allegations." *Id.* (quoting *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993)); *Blackwell v. State*, 193 S.W.3d 1, 21 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("It is generally improper for a witness to offer a direct opinion as to the

9

truthfulness of another witness and such opinion is therefore inadmissible evidence."). The Court of Criminal Appeals has further held that an expert who testifies that a class of persons to which the victim belongs, such as child sexual-abuse complainants, is truthful is "essentially telling the jury that they can believe the victim in the instant case as well," and this is not expert testimony that will assist the trier of fact. *Yount*, 872 S.W.2d at 711; *Fuller v. State*, 224 S.W.3d 823, 832 (Tex. App.—Texarkana 2007, no pet.) (stating that experts on child sexual abuse are not "human lie detectors").

Here, Erika Gomez testified that she conducted the forensic interview of D.M. During her testimony, she had the following exchange with the State:

| [The State]: | Again, without going into detail as to what [D.M.] told you, at some point you end the interview; is that correct? |
|---|---|
| [Gomez]: | Yes. |
| [The State]: | Now, during your interview with her, did you find her to be credible in what she was telling you? |
| [Gomez]: | Yes. |
| [The State]: | When your interview was over, did you find her to be consistent with what she told you in the interview room, with what she had told police officers and what you had learned during your staffing process? |
| [Gomez]: | I cannot recall the staffing. So, I don't know, per se, what the law enforcement said. So, I can't recall. |
| [The State]: | That's fair. But you found her to be credible when you were done; and after you spoke with police |

10

> officers, you had no reason to disbelieve she was a
> credible little girl?
>
> [Gomez]:        Yes.

Appellant did not file a motion for new trial, and, thus, the record is silent concerning trial counsel's strategy in failing to object to this testimony. The State agrees with appellant that this testimony constituted an impermissible direct opinion concerning the truthfulness of D.M. The State disagrees, however, that defense counsel's failure to object to this testimony constituted ineffective assistance of counsel.

Texas courts, including this Court, have previously held that defense counsel's failure to object to direct opinion testimony concerning the credibility of a witness constitutes deficient performance because no reasonable trial strategy would justify allowing this type of testimony before the jury. *See, e.g.*, *Lopez v. State*, 315 S.W.3d 90, 101–02 (Tex. App.—Houston [1st Dist.] 2010), *rev'd*, 343 S.W.3d 137 (Tex. Crim. App. 2011); *Lane v. State*, 257 S.W.3d 22, 27–29 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding that trial counsel's failure to object to improper opinion testimony constituted deficient performance but did not prejudice defendant); *Fuller*, 224 S.W.3d at 835–36 (holding that trial counsel's failure to object to improper opinion testimony concerning child's truthfulness constituted deficient performance because no conceivable strategy or tactic would justify allowing this testimony). However, the Court of Criminal Appeals reversed this Court's decision in *Lopez*, holding that because the record was silent as to why

11

trial counsel failed to object to the improper opinion testimony (as well as to inadmissible testimony from multiple outcry witnesses), the defendant had failed to meet his burden under the first prong of *Strickland* to demonstrate deficient performance. *See* 343 S.W.3d at 143–44; *see also Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (stating, in case with ineffective assistance claim based on confrontation clause, that court did not know why counsel failed to object on confrontation grounds "because the record is silent on the matter" and holding that record therefore failed to show deficient performance).

In this case, appellant did not file a motion for new trial or other post-judgment motion that raised his claim of ineffective assistance. Instead, he raised this claim for the first time on direct appeal. While appellant is permitted to do this, the record in this case is silent concerning trial counsel's reasons for failing to object to Gomez's testimony regarding D.M.'s credibility. In the absence of evidence concerning trial counsel's reasons for failing to object to this opinion testimony, we conclude that appellant has failed to meet his burden under *Strickland* to show, by a preponderance of the evidence, that his trial counsel rendered deficient performance. *See Lopez*, 343 S.W.3d at 143–44; *see also Menefield*, 363 S.W.3d at 593 (stating, while holding that silent record did not demonstrate deficient performance, that "[n]either trial counsel nor the State have been given an opportunity" to respond to defendant's ineffective assistance allegations raised for first time on direct appeal).

12

Furthermore, even if the record is sufficient to determine that trial counsel's failure to object to Gomez's testimony constituted deficient performance, appellant has not demonstrated, by a preponderance of the evidence, that he was prejudiced by this failure. To demonstrate prejudice, appellant was required to show that a reasonable probability exists that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Thompson*, 9 S.W.3d at 812. Appellant makes no such showing, instead merely arguing that "there is no fair assurance that [appellant's] unique and diverse frailties would not have warranted a different verdict or a less harsh sentence had the State's expert not explicitly vouched for the complainant's credibility."

This case, like many of the other cases in which courts have held that counsel's failure to object to direct expert opinions concerning the credibility of the child complainant constituted deficient performance that prejudiced the defendant, essentially involved a "swearing match" between the complainant, D.M., and appellant, with no physical evidence or other eyewitness testimony to corroborate D.M.'s allegations, and, thus, D.M.'s credibility was the ultimate issue before the jury. *See Fuller*, 224 S.W.3d at 837; *Sessums v. State*, 129 S.W.3d 242, 248 (Tex. App.—Texarkana 2004, pet. ref'd); *Miller v. State*, 757 S.W.2d 880, 884–85 (Tex. App.—Dallas 1988, pet. ref'd). However, the cases from other courts, and even *Lopez* from this Court, all involved situations in which multiple expert witnesses

13

testified concerning the complainant's credibility and that testimony was heavily emphasized during closing argument. *See Lopez*, 315 S.W.3d at 101–02 (noting that three witnesses testified to complainant's outcry statements, two witnesses testified that they believed complainant was truthful, and State "focused heavily" on testimony during argument); *Fuller*, 224 S.W.3d at 837 (noting that four of State's five witnesses testified in some manner that child complainant was truthful and credible witness and that trial counsel failed to object when State emphasized testimony during argument); *Sessums*, 129 S.W.3d at 247–48 (noting that four experts testified concerning complainant's credibility and State emphasized in argument that complainant must not be lying because he had convinced four experts that he was telling truth); *Miller*, 757 S.W.2d at 885 (noting that three witnesses, including two experts, testified to complainant's credibility, and one expert testified that she had "exceptional ability to judge truthfulness").

Here, appellant complains only of Gomez's testimony on two occasions that she found D.M. to be credible.[2] Neither the State nor defense counsel emphasized,

---

[2] We note that this Court has, in two unpublished memorandum opinions, held that a defendant had not established prejudice as a result of trial counsel's failure to object to a single witness's improper opinion testimony concerning the child complainant's credibility. *See James v. State*, No. 01-13-00770-CR, 2014 WL 2767396, at *3–4 (Tex. App.—Houston [1st Dist.] June 17, 2014, pet. ref'd) (mem. op., not designated for publication); *Rivera v. State*, No. 01-10-00098-CR, 2010 WL 5187713, at *7–8 (Tex. App.—Houston [1st Dist.] Dec. 23, 2010, pet. ref'd) (expressly distinguishing this Court's decision in *Lopez* and noting that opinion testimony from single lay witness was not "a barrage" of inadmissible testimony designed to support complainant's credibility).

or even mentioned, this testimony during argument. Instead, the State focused on the consistency of D.M.'s statements to her mother, Gomez, and Dr. Donaruma. Furthermore, we note that while the jury convicted appellant of the offense of indecency with a child by exposure, it failed to reach a verdict on the offense of indecency with a child by contact, indicating that the jury conducted its own review of D.M.'s credibility and did not believe all of her testimony. *See Schutz v. State*, 63 S.W.3d 442, 445 (Tex. Crim. App. 2001) (noting, in holding that erroneous admission of improper opinion testimony was harmless, that jury convicted defendant of one charge but acquitted him of another, indicating that jury did not "unconditionally believe" complainant, and that record did not support conclusion that jury allowed improper expert opinion testimony "to supplant its own decision").

We therefore conclude that appellant has not established by a preponderance of the evidence that a reasonable probability exists that, but for counsel's failure to object to Gomez's testimony concerning D.M.'s credibility, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Thompson*, 9 S.W.3d at 812. We hold that appellant has not established that his trial counsel rendered constitutionally ineffective assistance. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Perez*, 310 S.W.3d at 892–93; *Cannon*, 252 S.W.3d at 348–49.

Appellant also argues that, under *Blue v. State*, Gomez's testimony "irreparably invaded the province of the jury as to the credibility of witnesses" and that this constitutes fundamental error to which appellant was not required to object in the trial court. *See* 41 S.W.3d 129, 132 (Tex. Crim. App. 2000) (plurality op.) (stating that trial judge's comments tainted defendant's presumption of innocence in front of venire and constituted "fundamental error of constitutional dimension" that required no objection to preserve error for appellate review). As the State points out, however, the Court of Criminal Appeals has subsequently held that *Blue* was a fractured decision in which it "is not possible to ascertain a majority holding or the narrowest ground or rule that commands a majority of the court" and therefore *Blue* has no precedential value, although it may be used as persuasive authority. *See Unkart v. State*, 400 S.W.3d 94, 100–01 (Tex. Crim. App. 2013). This case is factually distinguishable from *Blue*, which involved statements by the trial court during voir dire that discussed efforts by the defendant and the State to reach a plea agreement and the court's preference that defendants plead guilty. *See* 41 S.W.3d at 130. We therefore will not treat the trial court's admission of Gomez's testimony concerning D.M.'s credibility as fundamental error requiring no objection to preserve the complaint for appellate review. *See Brumit v. State*, 206 S.W.3d 639, 644 (Tex. Crim. App. 2006) (noting that applicable test for determining when

16

appellate court may consider unassigned error is familiar standard set forth in *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993)).

We overrule appellant's first issue.

## Visiting Judge's Oath of Office

In his second issue, appellant contends that the record does not reflect that the visiting judge who presided over the trial took the constitutionally-required oath of office. He argues that, as a result, the judgment of conviction entered against him is void.

The Texas Constitution requires that all elected and appointed officers take two distinct oaths before beginning to perform the duties of their office. TEX. CONST. art. XVI, § 1(a)–(b) (setting out oath of office and "anti-bribery" oath); *see Prieto Bail Bonds v. State*, 994 S.W.2d 316, 320 (Tex. App.—El Paso 1999, pet. ref'd) (holding that senior judges are "appointed officers" and must take oaths required by Article XVI, Section 1); *see also Murphy v. State*, 95 S.W.3d 317, 319 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (noting that El Paso court in *Prieto Bail Bonds* held that constitution requires visiting judges to take required oaths to have authority to act on particular assignment). A challenge to a trial judge's legal qualifications may be raised for the first time on appeal. *Murphy*, 95 S.W.3d at 320 (citing *Wilson v. State*, 977 S.W.2d 379, 380 n.3 (Tex. Crim. App. 1998)).

Appellant relies on *Prieto Bail Bonds* to argue that Judge Clark, as a retired senior judge, was required to take the constitutional oaths of office and, because the record fails to demonstrate that Judge Clark did so, Judge Clark was not qualified to act in this case and appellant's conviction was void. Assuming, without deciding, that retired senior judges are required to take the constitutional oaths of office prior to beginning their assignments, this Court and the Fourteenth Court of Appeals have held on several occasions that "it has long been a 'cardinal rule' of appellate procedure in Texas that we 'must indulge *every* presumption in favor of the regularity of the proceedings and documents' in the trial court." *Murphy*, 95 S.W.3d at 320 (emphasis in original) (quoting *McCloud v. State*, 527 S.W.2d 885, 887 (Tex. Crim. App. 1975)); *see Simon v. State*, 525 S.W.3d 798, 799–800 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also Nealey v. State*, No. 01-15-00999-CR, 2017 WL 3389636, at *4 (Tex. App.—Houston [1st Dist.] Aug. 8, 2017, no pet. h.) (mem. op., not designated for publication); *Murphy v. Countrywide Home Loans, Inc.*, 199 S.W.3d 441, 444 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (following rationale of *Murphy v. State* in civil context).

The presumption of regularity is a judicial construct that requires an appellate court, "absent *evidence* of impropriety," to indulge every presumption in favor of the regularity of the trial court's judgment. *Murphy*, 95 S.W.3d at 320 (emphasis in original) (quoting *Light v. State*, 15 S.W.3d 104, 107 (Tex. Crim. App. 2000)). "We

18

have consistently upheld the 'presumption of regularity of the judgment and the proceedings absent a showing to the contrary.'" *Id.* (quoting *Dusenberry v. State*, 915 S.W.2d 947, 949 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd)). The burden is on the appellant to overcome the presumption of regularity. *Id.* In *Murphy*, we expressly held that the presumption of regularity of trial court judgments and proceedings "applies to appellate challenges of visiting trial court judges for alleged failures to take their constitutionally required oaths." *Id.* We further held that an appellant who raises such a challenge "must make a prima facie showing that the trial judge did not take the required oaths before we will consider the issue on the merits." *Id.*; *see Simon*, 525 S.W.3d at 800 ("Merely alleging a failure to take oaths is not sufficient to overcome the presumption of regularity.").

Here, appellant contends that the record does not affirmatively demonstrate that Judge Clark, a retired senior judge, took the constitutionally-required oaths of office, and, thus, Judge Clark was without authority to act and the judgment of conviction is void. Appellant points to no evidence that Judge Clark failed to take the oaths of office. Instead, he merely alleges, unsupported by any proof in the record, that Judge Clark did not take the required oaths. Appellant bears the burden of presenting evidence of an impropriety to overcome the presumption of regularity of the trial court's judgment and proceedings. *See Murphy*, 95 S.W.3d at 320; *see also Nealey*, 2017 WL 3389636, at *5–6 (noting that because nothing in record

19

indicated that visiting judge did not take constitutionally-required oaths, record did not support defendant's contention that visiting judge could not lawfully preside over his trial); *Simon*, 525 S.W.3d at 800 (stating that defendant did not cite to any proof in record that visiting judge did not take required oaths of office and that mere allegation of failure to take oaths was insufficient to overcome presumption of regularity). Because appellant has pointed to no evidence in the record that Judge Clark did not take the oaths of office, we hold that appellant has not overcome the presumption of regularity of the trial court judgment and proceedings. *See Murphy*, 95 S.W.3d at 320.

We overrule appellant's second issue.[3]

**As-Applied Challenge to Constitutionality of Certain Court Costs**

Finally, in his third issue, appellant contends that the assessment of $80 in court costs against him for "summoning witnesses/mileage" was unconstitutional as applied to him because he is indigent and requiring him to pay this item of costs violated his confrontation rights and his right to compulsory process.

---

[3] To the extent appellant argues that the appellate record must affirmatively demonstrate that a visiting judge took the oaths of office, we note that a panel of this Court has recently stated, in an unpublished opinion, that "[t]he mere absence of proof in the record that a visiting judge took the judicial oath of office does not overcome the presumption" of regularity. *See Smith v. State*, No. 01-15-01055-CR, 2017 WL 929544, at *1 (Tex. App.—Houston [1st Dist.] Mar. 9, 2017, pet. ref'd) (mem. op., not designated for publication). We agree. Appellant cites no authority requiring that the appellate record affirmatively demonstrate that visiting judges took the oaths of office prior to beginning their assignments. We decline to impose such a requirement here.

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right "to be confronted with the witnesses against him" and "to have compulsory process for obtaining witnesses in his favor." U.S. CONST. amend. VI. Similarly, the Texas Constitution provides that in all criminal prosecutions the accused shall "be confronted by the witnesses against him and shall have compulsory process for obtaining witnesses in his favor." TEX. CONST. art. I, § 10.

The Confrontation Clause protects a criminal defendant's right to physically face those who testify against him as well as his right to conduct cross-examination. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S. Ct. 989, 998 (1987). The "essential purpose" of the Confrontation Clause is

> to prevent deposition and ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Woodall v. State*, 336 S.W.3d 634, 641–42 (Tex. Crim. App. 2011) (quoting *Mattox v. United States*, 156 U.S. 237, 242–43, 15 S. Ct. 337, 339 (1895)). The Compulsory Process Clause guarantees "the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *Ritchie*, 480 U.S. at 56,

21

107 S. Ct. at 1000. The Court of Criminal Appeals has held that this right "guarantees only compulsory process for obtaining witnesses whose testimony would be both material and favorable to the defense." *Coleman v. State*, 966 S.W.2d 525, 527–28 (Tex. Crim. App. 1998) (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S. Ct. 3440, 3446 (1982)). The defendant bears the burden of demonstrating materiality and favorability, for if the burden was not placed on the defendant, "frivolous and annoying requests [c]ould make the trial endless and unduly burdensome on the Court and all officers thereof." *Id.* at 528 (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983)).

The constitutionality of a criminal statute is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). A litigant who raises an "as applied" challenge to the constitutionality of a statute, as appellant does here, concedes the statute's general constitutionality, but "asserts that the statute is unconstitutional as applied to his particular facts and circumstances." *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011). We presume that the statute is valid and that the Legislature has not acted unreasonably or arbitrarily. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). Thus, the burden rests upon the individual challenging the statute to demonstrate its unconstitutionality. *Id.*; *see Schlittler v. State*, 488 S.W.3d 306, 313 (Tex. Crim. App. 2016). We must evaluate the statute as it has been applied in practice against the particular challenger.

22

*Lykos*, 330 S.W.3d at 912. We may not entertain hypothetical claims, and it is not sufficient to show that the statute may operate unconstitutionally against the challenger or someone in a similar position in another case. *Id.*

Code of Criminal Procedure article 42.16 requires, in cases in which the punishment is other than a fine, that the trial court's judgment assess costs against the defendant and "order the collection thereof as in other cases." TEX. CODE CRIM. PROC. ANN. art. 42.16 (West 2006). "Only statutorily authorized court costs may be assessed against a criminal defendant." *Johnson v. State*, 423 S.W.3d 385, 389 (Tex. Crim. App. 2014). A "mandatory" court cost is a cost, other than attorney's fees, "that is a predetermined, legislatively mandated obligation imposed upon conviction." *Id.* Court costs are "not part of the guilt or sentence of a criminal defendant, nor must they be proven at trial; rather, they are 'a nonpunitive recoupment of the costs of judicial resources expended in connection with the trial of the case.'" *Id.* at 390 (quoting *Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011)). Convicted defendants have "constructive notice" of mandatory court costs that are set by statute. *Cardenas v. State*, 423 S.W.3d 396, 399 (Tex. Crim. App. 2014).

Code of Criminal Procedure article 102.011(a) requires a defendant convicted of a felony to pay several fees for "services performed in the case by a peace officer," including $5 for "summoning a witness." TEX. CODE CRIM. PROC. ANN. art.

23

102.011(a)(3) (West Supp. 2016). Article 102.011(b) requires a defendant who must pay fees under that article to pay "29 cents per mile for mileage required of an officer to perform a service listed in this subsection and to return from performing that service." *Id.* art. 102.011(b) (providing that subsection applies to traveling to summon witnesses). Article 102.011 "does not condition the imposition of the witness/mileage fee upon which party summoned the witnesses." *London v. State*, 490 S.W.3d 503, 510 (Tex. Crim. App. 2016) ("*London I*").

This Court recently addressed whether article 102.011(a)(3) and (b) violates a defendant's constitutional right of confrontation and right of compulsory process. *London v. State*, — S.W.3d —, No. 01-13-00441-CR, 2017 WL 2779907 (Tex. App.—Houston [1st Dist.] June 27, 2017, pet. filed) ("*London II*"). In that case, London pleaded guilty shortly before trial to the offense of possession of a controlled substance. *Id.* at *1. The trial court's judgment ordered London to pay $329 in court costs, and the itemized bill of costs provided to him demonstrated that this amount included $35 for summoning seven witnesses for the State. *Id.* In his sole issue on appeal, London challenged the constitutionality of article 102.011(a)(3), arguing that, because he was indigent, the statute violated his rights of confrontation and of compulsory process. *Id.*

In holding that he had not met his burden to establish that article 102.011(a)(3) was unconstitutional as applied to him, this Court noted that London had not

24

identified any material and favorable witnesses he had wished to present, but could not, and London had not attempted to issue any subpoenas or compel process for a potential witness. *Id.* at *2. Instead, London argued on appeal that "constructive notice" of the $5 fee for summoning witnesses precluded him from presenting an adequate defense. *Id.* The burden was on London to "make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness' testimony would be both material and favorable to the defense." *Id.* (quoting *Coleman*, 966 S.W.2d at 528). This Court held that, without this showing, it could not conclude that London's constructive notice of the fee for summoning witnesses denied him his right to have "compulsory process for obtaining witnesses in his favor." *Id.*

Similarly, with respect to London's argument that article 102.011(a)(3) denied him his constitutional right of confrontation, this Court noted that the fee for summoning witnesses was only assessed after London pleaded guilty, or "on conviction." *Id.* at *3. London's opportunity to confront or cross-examine the State's witnesses "was not contingent on his postjudgment ability to pay the witness fee." *Id.* London asserted that requiring him to pay this fee was "unfair and unconstitutional," but he did not demonstrate how the fee prevented him from exercising his right to be confronted by the witnesses against him. *Id.* This Court also noted that while London's appeal was "premised on a conclusory assertion that it is 'unfair and unconstitutional' to assess court costs against an indigent defendant,"

25

several of our sister courts have held that "indigence does not preclude the recovery of court costs, so long as they are not required to be paid in advance." *Id.* at \*4; *see, e.g.*, *Allen v. State*, 426 S.W.3d 253, 258–59 & n.14 (Tex. App.—Texarkana 2013, no pet.) ("[A] trial court can order an indigent defendant to pay court costs provided payment is not demanded before the trial court proceedings have concluded."); *Williams v. State*, 332 S.W.3d 694, 700 (Tex. App.—Amarillo 2011, pet. denied) (stating that legislatively mandated fees and court costs may be withdrawn from inmate's account without regard to inmate's ability to pay). This Court concluded, "London has not met his burden of showing that his constructive notice of the contingent possibility that in the event of his conviction he would be assessed a fee of $5 per witness had the actual effect, as applied to him in this case, of denying him compulsory process or confrontation of the witnesses against him." *London II*, 2017 WL 2997707, at \*4.

*London* is indistinguishable from this case. After his conviction, appellant was assessed $80 for "summoning witness/mileage." The record reflects that the State subpoenaed sixteen witnesses on three separate occasions; however, the cost assessed is consistent with charging appellant solely for the subpoenas issued for his actual trial date. The record also reflects that appellant subpoenaed two witnesses and that the subpoenas were given to a private process server—not a peace officer—for execution. Neither of these two witnesses for whom appellant obtained

26

subpoenas testified at trial, and the record includes no explanation as to why these witnesses were not called.

Appellant has failed to identify any "material and favorable" witness who he had wished to subpoena but was unable to subpoena because of the cost of summoning the witness. *See id.* at *2; *see also Coleman*, 966 S.W.2d at 527–28 (stating that Compulsory Process Clause "guarantees only compulsory process for obtaining witnesses whose testimony would be both material and favorable to the defense"). Because appellant has not made a showing that material and favorable witnesses were available to be called by him, we cannot conclude that the $5 fee for summoning witnesses, as applied in this case, operated to deny appellant his right to "have compulsory process for obtaining witnesses in his favor." *See London II*, 2017 WL 2779907, at *2.

Furthermore, the State called four witnesses to physically appear and testify at trial against appellant, and appellant had the opportunity to, and did, cross-examine each witness. *See id.* at *3 (noting that because witness fees are only assessed upon conviction, defendant's ability to confront or cross-examine State's witnesses was not contingent on postjudgment ability to pay fees). Appellant has not established how constructive notice of the $5 fee for summoning witnesses prevented him from exercising his constitutional right to be confronted with the

witnesses against him.[4]  *See id.*; *see also Lykos*, 330 S.W.3d at 912 (stating that, in as-applied constitutional challenge, courts must evaluate constitutionality of statute "as it has been applied in practice against the particular challenger").

We therefore conclude, pursuant to *London*, that appellant has not demonstrated that article 102.011(a)(3), as applied to him, operated to deny him his constitutional rights to confront the witnesses against him or to have compulsory process for obtaining witnesses in his favor.  *See London II*, 2017 WL 2779907, at *7; *see also Eugene v. State*, — S.W.3d —, No. 14-16-00391-CR, 2017 WL 3441207, at *4–5 (Tex. App.—Houston [14th Dist.] Aug. 10, 2017, no pet. h.) (following *London* and stating that for defendant to meet his burden on his as-applied challenge to article 102.011(a)(3), defendant "needed to state what he would have done differently had he not been on constructive notice that upon conviction, he would be assessed fees for summoning witnesses"); *Merrit v. State*, — S.W.3d —, No. 14-16-00426-CR, 2017 WL 3159861, at *6–7 (Tex. App.—Houston [14th Dist.] July 25, 2017, no pet. h.) (likewise rejecting defendant's as-applied challenge to

---

[4]      In an unpublished memorandum opinion, the Fourteenth Court of Appeals recently stated that "an indigent defendant is not deprived of the ability to confront witnesses merely because the defendant knows that he or she might someday be required to pay the costs of summoning those witnesses after a conviction." *Jones v. State*, No. 14-16-00444-CR, 2017 WL 3567911, at *6 (Tex. App.—Houston [14th Dist.] Aug. 17, 2017, no pet. h.) (mem. op., not designated for publication).

28

article 102.011(a)(3) on basis that it denied him his confrontation rights and right to have compulsory process to obtain favorable witnesses).

We overrule appellant's third issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Higley.

Publish.  Tex. R. App. P. 47.2(b).