**Opinion issued December 29, 2020**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-19-00332-CR**

**NO. 01-19-00333-CR**

_____

**BILLY STRAHAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 7**
**Harris County, Texas**
**Trial Court Case Nos. 2157387, 2157386**

---

## O P I N I O N

In two separate trials involving two different complainants, the juries found

appellant, Billy Strahan, guilty of the Class B misdemeanor offense of indecent

exposure.[1] In trial court cause number 2157387, which resulted in appellate cause number 01-19-00332-CR, the trial court sentenced appellant to 180 days' confinement in the Harris County Jail. In trial court cause number 2157386, which resulted in appellate cause number 01-19-00333-CR, the trial court sentenced appellant to 30 days' confinement in the Harris County Jail. On appeal, appellant raises the same issue in both cases, contending that his trial counsel rendered ineffective assistance by failing to object when the State elicited testimony from the investigating officer that he found both complainants to be credible.

We affirm.

## Background

### A. Trial Court Cause Number 2157386

V.W. (Vanessa)[2] worked as a security guard at an office building in a shopping center located in north Houston. Shortly after 5:00 p.m. on May 9, 2017, she escorted S.G. (Shannon), who worked in the building, to her vehicle in the parking lot. While Vanessa and Shannon were speaking in the parking lot, appellant drove by in his vehicle, a "green-ish blue-ish" Honda Civic, and parked near them. At one point, appellant "swung his [driver's side] door open." Vanessa saw that

---

[1] *See* TEX. PENAL CODE ANN. § 21.08(a).

[2] In this opinion, we refer to the complainants and civilian witnesses by pseudonyms to protect their privacy and for ease of reading.

appellant's pants were on the floor of his car and that he was masturbating. Vanessa used her cell phone to take a picture of this encounter, and the trial court admitted this picture into evidence. Appellant's face was not visible in this picture. Vanessa called 911 and reported appellant's behavior, and the trial court admitted a recording of this 911 call. Appellant drove out of the parking lot before police officers arrived, and Vanessa took a picture of the car's license plate as appellant drove away. Vanessa identified appellant in court as the person she saw in the Civic.

Shannon worked as a medical assistant. When she left her office on May 9, Vanessa accompanied her to the parking lot. They were standing outside and talking when Shannon saw a dark blue car approach. The driver of the car stopped in the parking lot, and Shannon saw him "gesturing with [his] hands on [his] chest" and, specifically, "[r]ubbing on" himself. Shannon testified that she and Vanessa moved to the other side of her car, and the driver drove off. Approximately twenty seconds later, the driver came back around, "[t]he door flung open, and [Shannon] saw a man exposing himself" and masturbating. Shannon "got a very good side profile" view of the driver, and she specifically noticed the driver's "broad nose, jawline, [lack of] hair," and the fact that he wore a gold earring. Shannon identified appellant in court as the driver of the car. Shannon also testified that appellant had been a patient at the clinic where she worked during the same year as this incident.

3

Houston Police Department Officer R. Ramirez responded to Vanessa's 911 call. At the scene, he spoke with both Vanessa and Shannon, and the women gave him a physical description of appellant and the license plate of his vehicle. Ramirez ran the license plate number on the computer in his patrol car, and that search identified Billy Ray Strahan Jr. as the registered owner of the vehicle.

HPD Detective S. Baltazar, who works in the adult sex crimes unit, investigated this case, and he spoke with Shannon as part of his investigation. The State had the following exchange with Baltazar:

Q. When you interviewed [Shannon], did you find her to be credible?

A. Yes, I did.

Q. In your training and experience, have you been taught to identify I guess—

A. Yes.

Q. —indicators?

A. Yes, depending on possibly if there's a lot of stuttering or stopping and conversation or even switching of the location that they were in, a lot of runaround with the story, if it doesn't correlate to how she prior told it.

Q. And you said that you—did you find [Shannon] to be credible?

A. Yes, I did find [Shannon] to be credible.

Defense counsel did not object to this line of questioning.

Baltazar learned of appellant's identity through the license plate number that Vanessa had provided, and he testified that appellant was the only registered owner

4

of the vehicle. Baltazar created a photo-array that included appellant's picture. When he showed the photo-array to Shannon, she stated that two individuals in the photo-array looked similar to the driver of the car, and Baltazar asked her to put a plus sign by the picture that she thought was more likely to be the driver and a minus sign by the picture that she thought was less likely to be the driver. Shannon put a plus sign next to appellant's picture.

Appellant testified on his own behalf. He stated that the vehicle depicted in the picture from Vanessa's cell phone was not his vehicle, and he was not in the vehicle in that picture. He agreed that the license plate in the picture from Vanessa's phone was registered to him. The trial court admitted three pictures of the car that appellant claimed was his. This car, also a Honda Civic, had the same license plate number as the car in the picture from Vanessa's phone.[3] When asked to describe the differences between his car and the car in the picture from Vanessa's phone, appellant testified:

> My car is light blue, and that car is—is dark blue. My car has white clear reverse lights on it when you put it in reverse and back up. That car has no reverse lights on it when you put it in reverse, and I have pictures of a lot of cars that have reverse lights when you back up. That car doesn't. Mine does. These pictures have reverse lights.

---

[3] There are no discernible differences between the car in the picture from Vanessa's phone and the car in the pictures provided by appellant.

Appellant claimed that the picture from Vanessa's phone was manipulated. He also testified that, on May 9, 2017, he worked at a thrift store over ten miles away from this incident and that his shift ended at 5:30 p.m. that day.

The jury found appellant guilty of the offense of indecent exposure, and the trial court assessed his punishment at 30 days' confinement in the Harris County Jail. Appellant did not file a motion for new trial.

**B.    Trial Court Cause Number 2157387**

On May 17, 2017, A.H. (Amanda) was driving to work during the late morning when a ball bearing on her car broke, and she pulled to the side of the road in north Houston. A vehicle from the tollway authority towed Amanda's car to a nearby Shell station, where she continued to wait for a tow truck. Amanda initially waited inside the convenience store, but after she heard from the tow truck driver, she returned to her vehicle, locked the doors, and turned her hazard lights on. While Amanda was waiting, a dark-color, four-door sedan pulled into the parking space next to her. The driver, whom Amanda identified in court as appellant, asked her if she was okay. Amanda rolled her window down, responded that she was fine, and rolled her window back up.

Amanda sat in her car for at least another five minutes, and appellant remained parked next to her. She mostly kept her attention on her phone, but she noticed that appellant had not left, and then she noticed movement—"[a] fast motion, a quick

motion"—in his vehicle. She looked over, saw that appellant's driver's side door was open, and saw appellant, with his pants below his waist, masturbating. Amanda honked her car's horn and immediately called 911. The trial court admitted a recording of this call. Appellant drove away after Amanda called 911, and she remained at the Shell station until both her tow truck and the police arrived. Amanda told the police officers that appellant had a gold earring in his ear, a gold nose ring, and "a mouthful of gold teeth." She was also able to give police appellant's license plate number.

HPD Officer J. Perez responded to Amanda's 911 call just after noon. When he arrived at the scene, he was wearing a body camera, which recorded his encounter with Amanda, including her statement of what had happened. The trial court admitted a copy of this recording. When Perez ran the license plate number that Amanda had given him, the search reflected that the plate number was registered to a Honda and the registered owner was Billy Strahan.

Detective Baltazar investigated this case as well. After reading the incident report, Baltazar interviewed Amanda. The State and Baltazar had the following exchange:

Q. When she gave—when [Amanda] came in for her interview, did—did she seem credible to you?

A. Yes, she did.

Q. Are you—in your training and experience, are you taught to pick up on identifiers of people that are not credible?

7

A. Yes, we are.

Q. Can you explain that to the jury, please?

A. Majority of the time we have—if there's a complainant or situation that the person cannot be credible, they tend to deflect statements or questions we ask. Also they'll kind of beat around the bush and not directly answer the question head-on but go around it and answer a piece of the question that was asked, or they that [sic] just clam up and not want to talk to us anymore.

Q. Did [Amanda] give and—did you see any of those indicators with [Amanda]?

A. No, not at all.

Defense counsel did not object to this line of questioning. Baltazar showed Amanda a photo-array, and she identified appellant as the person who exposed himself to her.

Appellant testified on his own behalf. He stated that he worked from 9:00 a.m. to 5:30 p.m. on May 17, 2017. The trial court admitted a copy of appellant's time sheet, which contained hand-written notations that he worked from 9:00 a.m. to 2:00 p.m., when he took a lunch break, and from 2:30 p.m. to 5:30 p.m. On cross-examination, appellant agreed that the license plate number that Amanda provided to the police was registered to him, but he testified that the car that Amanda saw at the Shell station was not his car.

The jury found appellant guilty of the offense of indecent exposure, and the trial court assessed his punishment at 180 days' confinement in the Harris County Jail. Appellant did not file a motion for new trial. This appeal followed.

8

**Ineffective Assistance of Counsel**

In his sole issue in both appeals, appellant contends that his trial counsel rendered constitutionally ineffective assistance of counsel when he failed to object to Baltazar's testimony, in both trials, that he found the two complainants, Shannon and Amanda, to be credible when he interviewed them before filing charges against appellant.

## A.     Standard of Review

The Sixth Amendment of the United States Constitution guarantees an accused's right to the reasonably effective assistance of counsel in criminal prosecutions. U.S. CONST. amend. VI; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (stating that right to counsel "does not provide a right to errorless counsel, but rather to objectively reasonable representation"). To prove a claim for ineffective assistance of counsel, an appellant must establish, by a preponderance of the evidence, that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Lopez*, 343 S.W.3d at 142. The appellant bears the burden to establish both prongs, and his "failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see Lopez*,

343 S.W.3d at 142 ("Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective.").

To satisfy the first prong of *Strickland*, the appellant must prove that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Lopez*, 343 S.W.3d at 142. To prove prejudice—the second prong of *Strickland*—the appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Id.* When reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, and we indulge a strong presumption that counsel's performance falls within the range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006); *see also Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) (noting that appellate review of trial counsel's representation is "highly deferential" and appellate courts presume counsel's actions "fell within the wide range of reasonable and professional assistance"). To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" that the claim is meritorious. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Lopez*, 343 S.W.3d at 142–43 (stating that "court must not engage in retrospective speculation" and that "it is not sufficient"

10

that defendant show, "with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence"). When direct evidence of trial counsel's reasoning is not available, "we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Lopez*, 343 S.W.3d at 143; *Toledo v. State*, 519 S.W.3d 273, 287 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) ("We do not assume that counsel lacked a sound reason for making the choices she did; on the contrary, the defendant bears the burden to demonstrate that no plausible reason exists for a particular act or omission.").

The trial record alone is rarely sufficient to demonstrate an ineffective assistance claim. *Williams v. State*, 526 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *see Lopez,* 343 S.W.3d at 143 ("On direct appeal, the record is usually inadequately developed and 'cannot adequately reflect the failings of trial counsel' for an appellate court 'to fairly evaluate the merits of such a serious allegation.'") (quoting *Bone*, 77 S.W.3d at 833). Ordinarily, trial counsel should be accorded an opportunity to explain his actions "before being condemned as unprofessional and incompetent." *Bone*, 77 S.W.3d at 836. If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find his performance to be deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013) (quoting *Menefield*, 363 S.W.3d at 593); *Williams*,

11

526 S.W.3d at 583. It is a "rare case" in which ineffectiveness is apparent from the trial record; and, to dispose of an ineffective assistance claim on direct appeal, the record must demonstrate that counsel's performance fell below an objective standard of reasonableness "as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Lopez*, 343 S.W.3d at 143.

## B. Analysis

Appellant argues that his trial counsel rendered ineffective assistance in both of his trials because counsel failed to object when the State asked Detective Baltazar, who investigated both offenses and interviewed both complainants, whether he found the complainants to be credible.

"Direct opinion testimony about the truthfulness of another witness, without prior impeachment, is inadmissible, as it does more than 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* at 140–41 (quoting *Yount v. State*, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993)); *Blackwell v. State*, 193 S.W.3d 1, 21 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("It is generally improper for a witness to offer a direct opinion as to the truthfulness of another witness and such opinion is therefore inadmissible evidence."); *see also Macias v. State*, 539 S.W.3d 410, 416 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (stating, in case involving expert testimony concerning child complainant's

12

credibility, that expert testimony must "aid, but not supplant, the jury's decision" and that expert testimony "does not assist the jury if it constitutes 'a direct opinion on the truthfulness' of a child complainant's allegations") (quoting *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997)). This rule applies to both expert testimony and lay witness testimony. *Blackwell*, 193 S.W.3d at 21.

As this Court noted in *Macias*, Texas courts, including this Court, have previously held that trial counsel's failure to object to direct opinion testimony concerning the credibility of a witness constitutes deficient performance because no reasonable trial strategy would justify allowing this type of testimony before the jury. *See* 539 S.W.3d at 417 (citing *Lopez v. State*, 315 S.W.3d 90, 101–02 (Tex. App.—Houston [1st Dist.] 2010), *rev'd*, 343 S.W.3d 137 (Tex. Crim. App. 2011), *Lane v. State*, 257 S.W.3d 22, 27–29 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd), and *Fuller v. State*, 224 S.W.3d 823, 835–36 (Tex. App.—Texarkana 2007, no pet.)); *see also Sessums v. State*, 129 S.W.3d 242, 247–48 (Tex. App.—Texarkana 2004, pet. ref'd) (holding that trial counsel's failure to object to testimony from four expert witnesses concerning factors they looked at to determine whether particular child complainant was telling truth or was credible constituted deficient performance that prejudiced defendant); *Miller v. State*, 757 S.W.2d 880, 884–85 (Tex. App.—Dallas 1988, pet. ref'd) (holding that testimony from three witnesses concerning child complainant's credibility improperly bolstered complainant's

testimony and trial counsel's failure to object to testimony constituted constitutionally deficient performance that prejudiced defendant); *Garcia v. State*, 712 S.W.2d 249, 253 (Tex. App.—El Paso 1986, pet. ref'd) (holding that trial counsel's failure to object to testimony from two witnesses—investigating detective and expert witness concerning child sexual assault cases—concerning child complainants' credibility constituted constitutionally deficient performance).

In *Lopez*, however, the Court of Criminal Appeals reversed this Court's holding that trial counsel rendered ineffective assistance by failing to object to, among other things, improper opinion testimony from an outcry witness and the investigating officer concerning the complainant's truthfulness. *See* 343 S.W.3d at 143–44. The court noted that the State had offered several possible reasons why trial counsel did not object to the improper opinion testimony. *Id.* at 141. The court also noted that the appellate record was silent concerning why trial counsel failed to object to the improper testimony and the defendant did not introduce into the record any information concerning counsel's rationale. *Id.* at 143–44.

Ultimately, the Court of Criminal Appeals concluded that the defendant failed to meet his burden under *Strickland* to demonstrate that his trial counsel's performance was deficient. *Id.* at 144; *see also Macias*, 539 S.W.3d at 417 (following *Lopez* and holding that, in case in which trial counsel failed to object to expert witness testimony concerning child complainant's credibility but appellate

14

record was silent concerning trial counsel's reasons for failing to object, defendant failed to meet burden under *Strickland* to demonstrate, by preponderance of evidence, that trial counsel's performance was deficient); *Blackwell*, 193 S.W.3d at 21–22 (stating that defendant failed to meet burden under *Strickland* in case in which outcry witness testified she believed outcry made by child complainant and investigating officer testified to what she looked for in determining whether complainant was believable and that "no alarms" were raised during interview with complainant, but defendant did not present evidence concerning trial counsel's failure to object to this testimony, because appellate court must presume counsel had plausible reason for actions, and court could not "conclude that there could be no plausible reason for counsel's decision not to object to this testimony at trial").

Here, in both of the cases against appellant, Detective Baltazar was the investigating officer, and he testified that he interviewed the complainants, Shannon and Amanda, as part of his investigation. During the trial for the offense against Shannon, Baltazar testified:

> Q. When you interviewed [Shannon], did you find her to be credible?
>
> A. Yes, I did.
>
> Q. In your training and experience, have you been taught to identify I guess—
>
> A. Yes.
>
> Q. —indicators?

15

A. Yes, depending on possibly if there's a lot of stuttering or stopping and conversation or even switching of the location that they were in, a lot of runaround with the story, if it doesn't correlate to how she prior told it.

Q. And you said that you—did you find [Shannon] to be credible?

A. Yes, I did find [Shannon] to be credible.

In the separate trial concerning the offense against Amanda, Baltazar testified similarly as follows:

Q. When she gave—when [Amanda] came in for her interview, did—did she seem credible to you?

A. Yes, she did.

Q. Are you—in your training and experience, are you taught to pick up on identifiers of people that are not credible?

A. Yes, we are.

Q. Can you explain that to the jury, please?

A. Majority of the time we have—if there's a complainant or situation that the person cannot be credible, they tend to deflect statements or questions we ask. Also they'll kind of beat around the bush and not directly answer the question head-on but go around it and answer a piece of the question that was asked, or they that [sic] just clam up and not want to talk to us anymore.

Q. Did [Amanda] give and—did you see any of those indicators with [Amanda]?

A. No, not at all.

Defense counsel did not object to this testimony in either trial.

Appellant did not file a motion for new trial in either case. The record is therefore silent concerning trial counsel's reasoning for why he did not object to Baltazar's testimony concerning Shannon's and Amanda's credibility. In *Lopez*, a

16

factually analogous case, the Court of Criminal Appeals held that because the defendant did not supplement the record to include evidence of his trial counsel's rationale or strategy for failing to object to improper opinion testimony concerning the complainant's credibility, the defendant failed to establish the first prong of *Strickland*—deficient performance—by a preponderance of the evidence. *See Lopez*, 343 S.W.3d at 144; *Macias*, 539 S.W.3d at 417; *Blackwell*, 193 S.W.3d at 21–22.

Here, we follow the Court of Criminal Appeals' decision in *Lopez*, and our own precedent in *Macias* and *Blackwell*, and conclude that, on this silent record, appellant has failed to demonstrate that his counsel's failure to object to Baltazar's testimony fell below an objective standard of reasonableness under prevailing professional norms. *See Lopez*, 343 S.W.3d at 143–44; *Macias*, 539 S.W.3d at 417; *Blackwell*, 193 S.W.3d at 21–22; *see also Brown v. State*, 580 S.W.3d 755, 767 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (holding that improper admission of investigating officer's opinion that defendant was not credible was harmless error in part because officer called district attorney's office to accept charges against defendant after investigation and "the jury could reasonably assume that [the investigating officer] did not find [the defendant] credible and believed he was guilty of sexual assault"); *Sandoval v. State*, 409 S.W.3d 259, 294–95 (Tex. App.—Austin 2013, no pet.) (noting, in case in which court found that admission of detective's testimony concerning complainant's and defendant's credibility was error but

17

harmless, that detective's opinions "were not particularly powerful" because, given fact that, after his investigation, detective forwarded case to district attorney's office for prosecution, "one could logically assume that he found [the complainant] credible, her allegations truthful, and believed [the defendant] was guilty of committing this sexual assault").

We overrule appellant's sole issue on appeal in both cases.

## Conclusion

We affirm the judgments of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Hightower, and Countiss.

Publish.  TEX. R. APP. P. 47.2(b).