**Opinion issued July 11, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-18-00417-CR**

———————————

**PASCAL DEWAYNE GARRIOTT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 253rd District Court**
**Chambers County, Texas**
**Trial Court Case No. 18876**

---

**MEMORANDUM OPINION**

Pascal Dewayne Garriott was convicted of driving while intoxicated with

two or more previous convictions for DWI and as a habitual felony offender.[1] He

---

[1]   *See* TEX. PENAL CODE §§ 49.04 (setting forth offense of driving while intoxicated), 49.09 (setting forth enhanced offenses and penalties for DWI), 12.42 (setting forth penalties for repeat and habitual felony offenders).

was sentenced to 60 years' confinement. In a single issue, Garriott contends that his trial counsel rendered ineffective assistance by eliciting adverse testimony from two witnesses during the guilt-innocence stage of trial.

We affirm.

## Background

This is an ineffective-assistance-of-counsel case. The underlying offense is DWI. For purposes of this appeal, the evidence and facts are undisputed.

On January 12, 2016, a motorist travelling west on Interstate 10 through Chambers County, Texas observed a truck swerving in and out of its lane, causing other vehicles to veer off the road. Concerned that the truck might cause an accident, the motorist called 911, reported the truck's erratic driving, and stayed on the phone with the dispatcher until the truck was pulled over by a State Trooper with the Texas Department of Public Safety.

The trooper had followed the truck for two-to-three miles and decided to pull it over to check on the driver's condition after observing the truck drift in and out of its lane several times. The trooper later testified that the truck did not "react immediately" to the sirens of the trooper's vehicle and was "a little slow to stop."

Once on the shoulder, the trooper identified the driver as Garriott, informed him that the police had received a call regarding his driving, and asked whether he was okay. As Garriott responded that he was fine, the trooper "began to notice

2

signs of impairment," such as "slow awkward movements" and "slow" answers to the trooper's questions.

The trooper instructed Garriott to step out of his truck and then administered three standardized field sobriety tests ("FSTs"). First, the trooper administered the horizontal gaze nystagmus test, which checks for "involuntary jerking of the eyes," which is a symptom caused by alcohol and some—but not all—drugs. Garriott passed the test. Then, the trooper administered the "walk and turn," which requires the driver "to take nine heel-to-toe steps down an imaginary line" and then "turn around and take nine heel-to-toe steps back." Garriott's "performance was poor." Garriott "could not balance during the instructions, he started too soon, stopped while walking, took the wrong number of steps, missed heel-to-toe, and made an improper turn." Finally, the trooper administered the "one-leg stand," which requires the driver to stand on one leg, with the other foot lifted six inches parallel to the ground, for 30 seconds. Again, Garriott's "performance was poor."

The trooper then administered two non-standardized FSTs, which, the trooper later explained, do not require balance and are intended for drivers who have injuries and other conditions that impair their balance. First, the trooper administered the "ABCs," instructing Garriott to recite his ABCs, starting with the letter D and ending with the letter X. "Again, his performance was poor. He completed most of the test, started over, said three more letters, started over again,

3

and then went past X, where [the trooper had] told him to stop, all the way to Z." Second, the trooper administered the "finger count," instructing Garriott "to start with [his] small finger and work [his] way up to the index finger touching each finger with [his] thumb, count[ing] one, two, three, four," and then to "go backwards," counting down, "four, three, two, one." The trooper instructed Garriott to do it three times. "Again his performance was poor. . . . The order that he touched his fingers was incorrect. The more times that he went through, he was counting wrong, saying the same numbers twice. And he did it five times instead of three."

At the end of the finger count, the trooper determined that Garriott had lost the normal use of his mental and physical faculties and advised him that he was under arrest for DWI.

Garriott was taken to a clinic, where he consented to a blood draw. The blood sample was sent for analysis to the Texas Department of Public Safety's Austin Crime Lab.

The blood sample tested positive for four drugs: (1) the benzodiazepine alprazolam, commonly known by the brand name Xanax, detected at 0.062 milligrams per liter; (2) the cocaine metabolite benzoylecgonine, detected at less than 0.05 milligrams per liter; (3) the muscle relaxer carisoprodol, commonly

4

known by the brand name Soma, detected at 2.8 milligrams per liter; and (4) the carisoprodol byproduct meprobamate, detected at 10 milligrams per liter.

The toxicologist who analyzed the blood later testified that the levels of alprazolam and carisoprodol present in Garriott's blood were within the therapeutic range, i.e., the range in which the drugs are effective for their intended purpose. The toxicologist further testified that the alprazolam, carisoprodol, and meprobamate are central nervous system ("CNS") depressants and that benzoylecgonine, depending on when the cocaine is ingested, can act as a CNS depressant as well. Finally, the toxicologist testified that the amount and combination of drugs in Garriott's blood can cause dizziness, slurred speech, slow movement, mental confusion, and impaired driving.

Garriott was indicted for DWI with two or more previous convictions for DWI and as a habitual felony offender.[2] He was tried, convicted, and sentenced to 60 years' confinement. Garriott appeals.

## Ineffective Assistance of Counsel

In his sole issue, Garriott contends that his trial counsel rendered ineffective assistance by eliciting adverse testimony from two witnesses during the guilt-innocence stage of trial.

---

[2] Garriott had two prior convictions for DWI, three prior convictions for delivery of marijuana, as well as prior convictions for burglary of a habitation, escape, involuntary manslaughter, and kidnapping.

## A.    Applicable law and standard of review

To prevail on a claim for ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Macias v. State*, 539 S.W.3d 410, 415 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

Under the first prong, "the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. This requires the defendant to prove "that counsel's performance fell below an objective standard of reasonableness, considering the facts of the particular case and judged at the time of counsel's conduct." *Ex parte Gonzales*, 204 S.W.3d 391, 393 (Tex. Crim. App. 2006).

Under the second prong, "the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. This requires the defendant to prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *Macias*, 539 S.W.3d at 415.

In reviewing a claim for ineffective assistance of counsel, we are "highly deferential" to trial counsel. *Macias*, 539 S.W.3d at 415–16. We indulge a "strong presumption" that trial counsel's performance "fell within the wide range of

6

reasonable professional assistance." *Ex parte LaHood*, 401 S.W.3d 45, 50 (Tex. Crim. App. 2013).

To prove that counsel's performance was deficient, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Blackwell v. State*, 193 S.W.3d 1, 21 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (quoting *Strickland*, 466 U.S. at 689). "Any allegation of ineffectiveness must be firmly founded in the record, which must demonstrate affirmatively the alleged ineffectiveness." *Blackwell*, 193 S.W.3d at 21. And "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

Thus, if the record does not contain affirmative evidence of counsel's reasoning or strategy, we normally presume that counsel's performance was not deficient. *Blackwell*, 193 S.W.3d at 21. "In rare cases, however, the record can be sufficient to prove that counsel's performance was deficient, despite the absence of affirmative evidence of counsel's reasoning or strategy." *Id.*

**B.    Analysis**

Here, Garriott complains of adverse testimony elicited by his trial counsel from two witnesses during the guilt-innocence stage of trial.

First, Garriott complains of adverse testimony elicited from the State's expert toxicologist, Dana Baxter. Specifically, Garriott complains that, in response to questioning from Garriott's trial counsel, Baxter testified that:

- scientific studies have demonstrated that a combination alprazolam, carisoprodol, and meprobamate (the drugs found in Garriott's blood) can cause impaired driving;

- the amount of alprazolam, carisoprodol, and meprobamate found in Garriott's blood exceeded the level shown to cause impairment in such studies; and

- because such drugs can cause impaired driving, the Food and Drug Administration requires warnings of such side effects to be included on the drugs' warning labels.

Second, Garriott complains of adverse testimony elicited from his own witness, his sister, C. L. Garriott. Specifically, Garriott complains that, in response to questioning from Garriott's trial counsel, Garriott's sister testified that, in her opinion, she did not believe Garriott should have been driving on the night he was stopped and arrested for DWI.

Garriott contends that this adverse testimony was not elicited in an attempt to raise inconsistencies or otherwise dispute evidence presented by the State. He emphasizes that this adverse testimony was not duplicative of testimony or other evidence presented by the State on direct examination during its case-in-chief. And he argues that he was harmed by this adverse testimony because it "only served to strengthen the State's case against him."

Garriott's ineffective-assistance claim fails for at least two reasons.

First, the record is not sufficiently developed for us to determine whether Garriott's trial counsel's performance fell below an objective standard of reasonableness. Garriott has failed to present evidence showing why trial counsel asked the questions that elicited the adverse testimony from the State's expert toxicologist and Garriott's sister. Nor has Garriott argued or otherwise demonstrated that this is one of those "rare cases" in which "the record can be sufficient to prove that counsel's performance was deficient, despite the absence of affirmative evidence of counsel's reasoning or strategy." *Id.* We therefore presume that trial counsel pursued a sound trial strategy, such as examining the witnesses under the reasonable (if not mistaken) belief that the responses would be different and support the defense's theory that Garriott's erratic driving and poor performance on the FSTs were the result of fatigue and not drug-induced intoxication. Because the record is silent as to trial counsel's strategy, we hold that Garriott has failed to rebut the "strong presumption" that counsel's performance "fell within the wide range of reasonable professional assistance." *LaHood*, 401 S.W.3d at 50.

Second, assuming (without deciding) that trial counsel rendered ineffective assistance by eliciting adverse testimony from the State's expert toxicologist and Garriott's sister, Garriott has failed to show that trial counsel's deficient

performance prejudiced the defense. *See Strickland*, 466 U.S. at 687. That is, Garriott has failed to show that there is a reasonable probability that, but for counsel's deficient examination of these two witnesses, Garriott would not have been found guilty. *See id.* at 694.

Setting aside the adverse testimony elicited by Garriott's trial counsel, the evidence presented against Garriott was overwhelming and undisputed. This evidence included the testimony of:

- the concerned motorist, who testified that she observed a truck swerving in and out of lanes, causing other vehicles to veer off the road; called 911 to report the erratic driving; and stayed on the phone with the dispatcher until the truck was stopped by a state trooper;

- the DPS state trooper, who testified that he received a dispatch for a truck with a possibly intoxicated driver; observed the subject truck for two-to-three miles as it drifted in and out of its lane; stopped the vehicle to check on the condition of the driver (later identified as Garriott); immediately began to notice "signs of impairment," such as "slow awkward movements" and delayed answers to his questions; administered five FSTs; determined, upon Garriott failing all but one of them, that Garriott was intoxicated; and arrested Garriott for DWI; and

- the DPS toxicologist, who testified that she analyzed the sample of Garriott's blood and the determined that it contained four drugs—the benzodiazepine alprazolam, the cocaine metabolite benzoylecgonine, the muscle relaxer carisoprodol, and the carisoprodol byproduct, meprobamate—in amounts that could cause dizziness, slurred speech, slow movements, mental confusion, and, ultimately, impaired driving.[3]

---

[3]    Garriott is therefore incorrect when he asserts in his appellate brief that there was "no direct testimony that the drugs found [in his blood sample] would impair a person's driving."

The evidence presented by the State also include a recording of the motorist's 911 call, the dashcam footage of the trooper's stop of Garriott and administration of the FSTs, and a recording of Garriott's subsequent conversation with the trooper, all of which were consistent with the testimony described above.

In light of this undisputed evidence—which Garriott himself concedes is sufficient to support the jury's conviction—the adverse testimony elicited by Garriott's trial counsel is insufficient to undermine confidence in the outcome of this case. We hold that Garriott has failed to prove that there is a reasonable probability that, but for counsel's elicitation of the adverse testimony, Garriott would not have been found guilty.

We overrule Garriott's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).