

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00530-CR

David **SALDIVAR**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR11680
Honorable Frank J. Castro, Judge Presiding

Opinion by:   Lori I. Valenzuela, Justice

Sitting:   Patricia O. Alvarez, Justice
Irene Rios, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: April 17, 2024

AFFIRMED

Appellant David Saldivar was indicted on one count of continuous sexual abuse of a child, V.S.[1] A jury found Saldivar guilty and assessed punishment at fifty years' confinement. In two appellate issues, Saldivar argues his trial counsel was constitutionally ineffective. We affirm.

## BACKGROUND

Saldivar and V.S.'s mother lived with V.S. and her six siblings in a single, three-hundred-square-foot room attached to V.S.'s grandmother's house. Over the course of several years,

---

[1] To protect the identity of the minor child, we refer to the child by her initials.

Saldivar sexually abused V.S. V.S. made an outcry at school to her teacher, who contacted Child Protective Services. V.S. underwent a forensic interview conducted by Samuel Abrego, and San Antonio Police Detective Virginia Garcia investigated the allegations arising from V.S.'s outcry. Saldivar was indicted on one count of continuous sexual abuse of a child. He elected to have a trial by jury.

During the trial, the jury heard testimony from several witnesses, including V.S., her mother, Abrego, Garcia, and Saldivar. V.S. testified regarding her outcry at school and that it was Saldivar who repeatedly sexually abused her. She described, in detail, three separate instances of sexual abuse by Saldivar. V.S.'s mother recounted on the stand how she learned of the abuse and that V.S. told her Saldivar was the culprit.

Abrego explained to the jury the duties of his job as a forensic interviewer, the qualifications he obtained, and that he had been a forensic interviewer for four and a half years. He stated the main goals of a forensic interview are not to be suggestive when speaking with a child and to maximize the child's ability to communicate their experiences. Abrego testified that he discerned V.S. understood the difference between a truth and a lie. Additionally, he testified that V.S. was forthcoming during the interview, descriptive, and was able to provide sensory details.

Garcia described to the jury the steps she took in her investigation, which included taking statements from V.S.'s teacher and three of her family members and reviewing Abrego's forensic interview of V.S. Garcia also testified that she contacted Saldivar to apprise him of V.S.'s allegations. When she contacted Saldivar, Garcia stated she invited him to make a statement and that he initially scheduled a time to do so. However, Saldivar rescheduled the meeting and then did not show up on the rescheduled date.

Testifying in his defense, Saldivar told the jury he did not commit any of the alleged acts and did not go to the interview with Garcia because of his right to remain silent. At the conclusion of the trial, the jury found Saldivar guilty and sentenced him to fifty years' imprisonment.

On appeal, Saldivar asserts his trial counsel was ineffective for failing to raise an objection during the State's examinations of Abrego and Garcia. Specifically, Saldivar contends his trial counsel was constitutionally ineffective by failing to object: (1) to Abrego's testimony as an expert witness and to Abrego's alleged comments regarding V.S.'s credibility; and (2) to Garcia's testimony containing alleged hearsay by implication.

### INEFFECTIVE ASSISTANCE OF COUNSEL

*Applicable Law*

To prevail on an ineffective assistance of counsel claim, Saldivar must satisfy the two-element test set out in *Strickland v. Washington*. *See* 466 U.S. 668, 687 (1984). First, Saldivar must show his trial counsel's performance was deficient. *Id.* This element "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Counsel's representation is constitutionally deficient if the assistance falls below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Conversely, counsel's representation does not fall below the objective standard of reasonableness simply because another would have selected a different trial strategy. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Whether counsel's performance falls within the bounds of the objective standard of reasonableness is judged by "the prevailing professional norms." *Id.*

If Saldivar can show his trial counsel's representation was deficient, he must then satisfy the second *Strickland* element. That is, Saldivar must show counsel's deficient performance prejudiced his case. *Strickland*, 466 U.S. at 687. "This requires showing that counsel's errors were

so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. "In other words, [Saldivar] must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson*, 9 S.W.3d at 812.

Both *Strickland* elements "'must be firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). As an appellate court, we strongly presume "that counsel's conduct falls within the wide range of reasonable professional assistance." *Robertson v. State*, 187 S.W.3d 475, 482 (Tex. Crim. App. 2006). Under this presumption, an ineffective assistance of counsel claim is a high hill to traverse via direct appeal "because the record is generally undeveloped." *Goodspeed*, 187 S.W.3d at 392. "This is true with regard to the question of deficient performance—in which counsel's conduct is reviewed with great deference, without the distorting effects of hindsight— where counsel's reasons for failing to do something do not appear in the record." *Id*.

This is not to say an appellant may never develop a sufficient record to vindicate a counsel's ineffectiveness via direct appeal. The alleging party may develop a sufficient record through a motion for a new trial or other post-judgment motion that provides counsel with an opportunity to, for example, provide reasoning and guidance on trial strategy—which may or may not justify counsel's action or inaction. *Macias v. State*, 539 S.W.3d 410, 417 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). "Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392 (internal quotations omitted).

*Discussion*

We will briefly address the underlying testimony connected to each of Saldivar's ineffective assistance of counsel arguments. We note, Saldivar filed a perfunctory motion for new

trial post-judgment; however, he did not raise an ineffective assistance of counsel argument or otherwise develop a record relevant to his ineffective assistance claim.

### A. Abrego's Testimony

Saldivar contends his trial counsel performed deficiently by (1) failing to object to Abrego's qualifications as an expert witness and (2) during Abrego's testimony, failing to object to Abrego's alleged comments regarding V.S.'s credibility during her forensic interview. In response, among other arguments, the State avers Saldivar failed to carry his burden to develop a record evidencing a constitutionally deficient and prejudicially outcome-changing performance by his trial counsel.

"There is no distinct line between lay opinion and expert opinion." *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). "An expert witness may offer an opinion if he is qualified to do so by his knowledge, skill, experience, training or education and if scientific, technical or other specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue." *Id.*; TEX. R. EVID. 702. "Witnesses who are not experts may testify about their opinions or inferences when those opinions or inferences are rationally based on the perception of the witnesses and helpful to a clear understanding of the witnesses' testimony or the determination of a fact in issue." *Rhomer,* 569 S.W.3d at 669; TEX. R. EVID. 701.

Although the State questioned Abrego about his background and experience, the State never sought to qualify Abrego as an expert, and Saldivar never objected. After Abrego testified that V.S. was forthcoming, descriptive, and able to provide sensory details during her forensic interview, the following exchange occurred between the State and Abrego without objection from Saldivar's trial counsel:

> **State:** And is there anything significant about children being able to give sensory details?

**Abrego:** Yes.

**State:** And what's the significance of that?

**Abrego:** Credibility of it.

**Trial Counsel:** I'm sorry, sir, can you say that again?

**Abrego:** Credibility of it.

**State:** And what do you mean by the credibility of it?

**Abrego:** Sometimes it's — I have done a lot of interviews, and sometimes during the interviews, I'll hear some details that will make me think, wow, like this — like — just it's very specific, the detail is very specific. I mean, I guess that's the best way I can describe it.

**State:** And when you say very specific, does the sensory details lead to what their — I guess add more credibility to what they're telling you they experienced?

**Abrego:** That's correct.

**State:** Okay. And was [V.S.] consistent in her — in her conversation with you about what she experienced?

**Abrego:** She was consistent. So, when we conduct forensic interviews, one of the main goals is to actually elicit a narrative response from the children. What that means is that you want them to explain to you or to describe what happened in a narrative way, step by step. And so, this child was able to do that. And when I went back to that narrative, and I gathered some details and information in reference to what she had already said, she was very consistent.

### B. Garcia's Testimony

Saldivar further asserts his trial counsel's performance was deficient because he failed to object to Garcia's impermissible hearsay that she interviewed V.S.'s teacher and three family members. According to Saldivar, conducting the interviews and then reaching out to him "left the jury with an 'inescapable conclusion' that after talking to the family and the outcry, [Garcia] was given specific details by them and then contacted [Saldivar] based on what they said." Saldivar avers this is impermissible hearsay by implication. Just like its response to Saldivar's first point of

error, the State, among other arguments, contends Saldivar failed to carry his burden to develop a record evidencing a constitutionally deficient and prejudicially outcome-changing performance by his trial counsel.

"Hearsay is a statement, including a written statement, other than one made by the declarant while testifying at the trial, which is offered to prove the truth of the matter asserted." *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995); TEX. R. EVID. 801(d). Although hearsay, absent a recognized exception or exemption, constitutes impermissible evidence, "[a]n extrajudicial statement or writing which is offered for the purpose of showing what was said rather than for the truth of the matter stated therein does not constitute hearsay." *Dinkins*, 894 S.W.2d at 347; TEX. R. EVID. 802 ("Hearsay is not admissible unless any of the following provides otherwise: a statute; [the rules of evidence]; or other rules prescribed under statutory authority."). In other words, "[i]f the out-of-court statement is relevant only if the trier of fact believes that the statement was both truthful and accurate, then the statement is hearsay." *Bell v. State*, 877 S.W.2d 21, 24 (Tex. App.—Dallas 1994, pet. ref'd). However, "[i]f the relevancy of the statement does not hinge on the truthfulness of the statement, it is not hearsay." *Id.* Although appearing straightforward on its face, the rule against hearsay commonly requires concentrated scrutiny by trial courts when, for example, an investigating officer is called to testify about facts learned during the course of an investigation. *Dinkins*, 894 S.W.2d at 347.

Generally, an investigating officer may testify to how a defendant became a suspect in an investigation without such testimony constituting hearsay. *See id.*; *Lyle v. State*, 418 S.W.3d 901, 904 (Tex. App.—Houston [14th Dist.] 2013, no pet.). However, the officer's testimony cannot, through artful questioning, be offered to prove the veracity of his investigation. *Schaffer v. State*, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989). Such a sequence of questioning and answering constitutes impermissible hearsay "where there is an inescapable conclusion that a piece of

evidence is being offered to prove statements made outside the courtroom." *Id.*; *Head v. State*, 4 S.W.3d 258, 261 (Tex. Crim. App. 1999) ("Whether the disputed testimony violates the hearsay prohibition necessarily turns on how strongly the content of the out-of-court statement can be inferred from the context."); *see, e.g.*, *Deary v. State*, 681 S.W.2d 784, 788 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd) (holding trial court erred by allowing inadmissible hearsay by inference when it allowed investigating officer to testify about how he learned who the defendant was); *cf. Davis v. State*, 169 S.W.3d 673, 676–77 (Tex. App.—Fort Worth 2005, no pet.) (holding officer's testimony that she received the identification of defendant from several anonymous tips was not hearsay because the State elicited the "testimony for the purpose of establishing how [defendant] was developed as a suspect.").

The following exchange occurred without objection during the State's direct examination of Garcia:

| | |
|---|---|
| **State:** | After you observed the forensic interview with [V.S.] and Mr. Abrego, what steps did you take next in your investigation? |
| **Garcia:** | I took statements from her mother, grandmother, and I believe the great grandmother, and also from the teacher who she initially reported this to, her schoolteacher. |
| **State:** | And without telling me what the people said in their statements, did they give you details of [V.S.'s] account of what happened? |
| **Garcia:** | Yes. |
| **State:** | And was that information provided or packaged as part of your investigation and given to our office? |
| **Garcia:** | Yes. |
| **State:** | After you met with the family members and—excuse me—and the teacher, what was your next step as far as your investigation? |
| **Garcia:** | To contact the person accused, which I believe I went to his home, or to contact him. I try to reach them by phone, but if I |

> can't reach them by phone, I usually try to go to their residence to contact them and let them know the pending charges at that point, and they have an opportunity to talk to me as well and give their side of the story.

**State:**          And did you do that in this case?

**Garcia:**          Yes.

### C. Analysis

On this record, we conclude Saldivar did not establish that his trial counsel's performance fell below an objective standard of reasonableness because he failed to raise an objection during the two lines of questioning at issue. Likewise, we conclude Saldivar did not establish that his trial counsel's performance fell below an objective standard of reasonableness because he failed to object to Abrego allegedly testifying as an unqualified expert witness.

Saldivar raises his ineffective assistance of counsel claims for the first time on appeal. Saldivar did not file a motion for a new trial or any other post-judgment motion complaining of his trial counsel's performance or develop a record applicable to his ineffective assistance claim. *Goodspeed*, 187 S.W.3d at 392; *Macias*, 539 S.W.3d at 417. Although Saldivar may raise these issues and arguments for the first time on appeal, this record is silent concerning trial counsel's reasons for deciding to refrain from objecting. *See Lopez*, 343 S.W.3d at 143–44 (noting that simply because another would have selected a different trial strategy does not mean a trial counsel's representation fell below the objective standard of reasonableness); *Macias*, 539 S.W.3d at 417; *Strahan*, 617 S.W.3d at 206–07 (overruling ineffective assistance claim related to an alleged failure to object to testimony regarding a witness's credibility where the record was silent on trial counsel's reasoning). When the record is silent, we assume trial counsel's failure to object was based on trial strategy. *See id.* Accordingly, we conclude Saldivar has failed to rebut the presumption that his trial counsel's performance fell within an objective standard of

reasonableness based on the prevailing professional norms. *Lopez*, 343 S.W.3d at 144; *Garcia v. State*, 57 S.W.3d 436, 440–41 (Tex. Crim. App. 2001); *Vega v. State*, 610 S.W.3d 79, 84 (Tex. App.—San Antonio 2020, no pet.).

Further, even if Saldivar had created a sufficient record, he failed to demonstrate he was prejudiced by his trial counsel's alleged failures to object. *Strickland*, 466 U.S. at 687; *Thompson*, 9 S.W.3d at 812. Addressing the second *Strickland* element, Saldivar generally argues his trial counsel's failure to object to Abrego's testimony was ineffective and that his trial counsel's failure to object to Garcia's testimony resulted in an unfair trial. "To demonstrate prejudice, appellant [is] required to show that a reasonable probability exists that, but for counsel's deficient performance, the result of the proceeding would have been different." *Macias*, 539 S.W.3d at 417–18. Saldivar does not explain how the sustaining of these objections would have led to the reasonable probability of a different result. *See id.* at 418 (finding appellant failed to show prejudice where he "merely argu[ed] that 'there is no fair assurance that [appellant's] unique and diverse frailties would not have warranted a different verdict or a less harsh sentence had the State's expert not explicitly vouched for the complainant's credibility.'"); *Osorio v. State*, 994 S.W.2d 249, 253 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Accordingly, we overrule both points of error and conclude Saldivar failed to satisfy the *Strickland* elements.

**CONCLUSION**

Having overruled each of Saldivar's issues, we affirm the judgment of the trial court.

Lori I. Valenzuela, Justice

DO NOT PUBLISH