

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00726-CR

Joseph Ray **LIMON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2023CR7697
Honorable Kristina Escalona, Judge Presiding

Opinion by:   Lori I. Valenzuela, Justice

Sitting:      Rebeca C. Martinez, Chief Justice
              Irene Rios, Justice
              Lori I. Valenzuela, Justice

Delivered and Filed: December 17, 2025

AFFIRMED

A jury found appellant Joseph Ray Limon guilty of murder and sentenced him to thirty years' confinement. In one appellate issue, Limon argues that his trial counsel's trial strategy rendered counsel's services constitutionally ineffective. We disagree and affirm the trial court's judgment.

## BACKGROUND

This case revolves around a love triangle between two men, Limon and Gilbert Garcia, and one woman, Yvette Rivas. Both men have fathered a child with Rivas—Limon, a daughter, and Garcia, a son. Limon and Rivas were high school sweethearts in a relationship for over a decade and a half. Shortly after their relationship ended in 2022, Rivas began seeing Garcia and became pregnant with their son.

Although they were no longer in a relationship, Limon would frequently visit Rivas's home to see their daughter. During one of his visits to Rivas's home, Limon read an entry from Rivas's journal that described Garcia assaulting Rivas while she was pregnant with her and Garcia's son. This infuriated Limon.

As midnight approached on June 13, 2023, Gilbert, Rivas, and their one-month-old son were lying in bed at her home when she heard a knock at the back door. Rivas answered the door to find Limon standing there, asking her to come outside. She initially declined but eventually went outside. Limon then asked if Rivas was having relations with Garcia, to which she replied that she wasn't, but that she and Garcia had had relations since their son was born. Limon then pushed her to the wall and choked her while stating, "I hate you." Limon let go, then started choking her again. Garcia came outside, and he and Limon had a verbal exchange. Garcia then began punching and kicking Limon. Limon was able to recover and started walking toward the front of the house where the car he was driving was parked, stating, "You messed up. He messed up." With Garcia standing behind her on the sidewalk, Rivas tried to get Limon to leave. As Limon was getting into the driver's side of the car, Garcia kicked the car door, impinging Limon's leg between the car door and the car's frame. At trial, Rivas testified that immediately after Garcia kicked the car door, Limon stepped out of the car, lifted his hand, and shot Garcia in the chest.

Garcia then stumbled down the street, followed by Limon. Garcia only made it a few seconds until he collapsed in the middle of the street. Limon stood over him and shot him in the head.

Rivas then ran inside the house to her room, where her one-month-old son was sleeping. Rivas testified that she immediately called her niece, Destiny Murrillo, and Limon's mother to inform them that Limon had killed Garcia. Destiny and her mother, Yvonne Murillo, Rivas's sister, quickly went to Rivas's house. When they arrived, Destiny ran to Garcia, while Yvonne entered the house and went to the bedroom with Rivas. Yvonne testified at trial that when they arrived, she saw Limon outside the house, and that he entered shortly after her and placed the gun on the kitchen counter. Law enforcement then arrived, ordered everyone to exit the house, spoke to multiple witnesses, photographed Rivas's injuries, and arrested Limon.

Arresting officer Reed Butler testified at trial that he took Limon into custody and read him his Miranda rights. After confirming he understood his rights, Limon admitted that Garcia had punched and kicked him; followed him to the car and kicked the door into his leg; he had shot Garcia in the chest, then ran over to Garcia after he collapsed and shot again; and that he had placed the gun on the kitchen counter in Rivas's house. Limon would recount the same events to Detective Raul Juarez in a video-recorded interview later that morning.

Limon was indicted, and his jury trial commenced on October 8, 2024. At trial, State's theory of the case was that Limon murdered Garcia. Limon's defensive strategy was that Limon was not the shooter, Rivas was, and that he falsely confessed to protect Rivas. Limon's trial counsel focused on an incomplete and incompetent investigation by law enforcement. This theory was the key theme of trial counsel's lengthy cross-examinations of the State's witnesses, which included Rivas, Destiny, Yvonne, Butler, Juarez, and an eyewitness, Armando Enciso.

Enciso, a neighbor of Rivas, testified that he looked out the window after hearing a gunshot and saw "someone laying on the floor [*sic*] in the middle of the road," and a man and a woman standing on the sidewalk. Enciso told the jury that the woman said to the man, "Stop. Why would you do that?" Enciso then recounted that the woman tried to hold the man back, but the man broke free, walked up to the person lying in the street, and "stood over him and shot."

In interviews before trial, Enciso had stated that he could not identify the man who had stood over the person and shot. However, when questioned by the State during trial, Enciso identified Limon as the shooter. This sparked the following exchange outside the jury's presence:

Trial Court: Okay. You want to make your objection, [trial counsel]?

Trial Counsel: At this time, Judge, I mean the prosecution is rather fair. I don't know if they want to — ask them to declare for a mistrial. But the objection will be [that] this testimony is highly prejudicial and should be stricken from the record at this time. The entirety of it. . . . [A]ll of sudden — he never said to anybody that he knew who the defendant was. And today he stated after the prosecution questioned, Yes, the defendant. Described him. That's highly prejudicial, Your Honor. This is — not true. That's perjury.

. . . .

Trial Court: Okay. So, State, you were not aware beforehand — the Court's concern is any discovery or notice issues as far as this type of evidence. This type of inculpatory evidence was not made known to [trial counsel]. So, State, you're saying that you did not know that this witness had never testified to you that he would be able to identify defendant.

State: He has told me twice precisely the opposite. That's why I did not disclose — had he identified, I certainly would have disclosed to [trial counsel] the nature and time of the statement.

Trial Court: Okay. Okay. The request for mistrial is respectfully overruled. Let's get started back with cross-examination.

Trial Counsel: Judge, I'm sorry. I didn't request for a mistrial.

Trial Court: I thought you did. I'm sorry.

Trial Counsel: No, I did not. I specifically said that's not — I didn't know if that's what the prosector [*sic*] wanted. I'm not requesting a mistrial. I'm requesting that

the testimony be stricken from the record in its entirety. That's what I'm requesting, Your Honor.

Trial Court: Are you asking for the testimony of the identification?

Trial Counsel: Judge, as the Court [is] aware, we already have issues with this witness coming in.[1] Now we have culpatory [sic] evidence in the middle of the trial, which he has never indicated before. And the [State] is correct. They never gave me any indication that this witness was going to identify. That's irreparable harm, Your Honor. The only possible solution is to strike his testimony in its entirety. Cross-examination is not going to help me, Your Honor, because they already heard it. Inculpatory evidence which was not produced in the *Brady*.

. . . .

Trial Court: Okay. I'm not going to strike his entire testimony, [trial counsel]. I will, if you want me to give the instructions, "The Court is going to have you disregard the question by State's attorney regarding identification of the" witness — I'm sorry — "of the defendant and any answer given by the witness in response."

Trial Counsel: That will [be] sufficient, Your Honor.

Trial Court: Okay. Okay. Let's go ahead and line [the jury] up, please.

The trial court instructed the jury to disregard Enciso's identification of Limon, and the parties continued their questioning. After Enciso's testimony concluded, the State rested. Trial counsel moved for a directed verdict, arguing that the State had failed to "make a prima [facie] case for murder," which the trial court denied. Limon did not present a case-in-chief.

The jury found Limon guilty and sentenced him to thirty years' confinement. Limon filed a motion for a new trial, arguing that the evidence presented at trial was insufficient to convict him of murder, which the trial court denied. Limon now appeals his conviction, raising one issue: that his trial counsel's trial strategy was constitutionally ineffective.

---

[1] Before Enciso's testimony began, it was disclosed that he, despite prior warnings from the State, had entered the courtroom during a prior witness's testimony and remained in the courtroom for a brief period in violation of Texas Rule of Evidence 614. *See* TEX. R. EVID. 614. After a hearing outside the presence of the jury, the trial court, after balancing all interests, held that Enciso's violation of Rule 614 did not disqualify him from testifying.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

*Applicable Law and Standard of Review*

To prevail on an ineffective assistance of counsel claim, Limon must satisfy the two-element test set out in *Strickland v. Washington*. *See* 466 U.S. 668, 687 (1984). First, Limon must show his trial counsel's performance was deficient. *Id.* This element "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Counsel's representation is constitutionally deficient if the assistance falls below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Conversely, counsel's representation does not fall below the objective standard of reasonableness simply because another would have selected a different trial strategy. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Whether counsel's performance falls within the bounds of the objective standard of reasonableness is judged by "the prevailing professional norms." *Id.* at 142.

If Limon can show his trial counsel's representation was deficient, he must then satisfy the second *Strickland* element. That is, Limon must show counsel's deficient performance prejudiced his case. *Strickland*, 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "In other words, [Limon] must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson*, 9 S.W.3d at 812.

Both *Strickland* elements "must be 'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). As an appellate court, we strongly presume "that counsel's conduct falls within the

wide range of reasonable professional assistance." *Robertson v. State*, 187 S.W.3d 475, 482 (Tex. Crim. App. 2006); *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021) ("A silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance."). Under this presumption, an ineffective assistance of counsel claim is a high hill to traverse via direct appeal "because the record is generally undeveloped." *Goodspeed*, 187 S.W.3d at 392. "This is true with regard to the question of deficient performance—in which counsel's conduct is reviewed with great deference, without the distorting effects of hindsight— where counsel's reasons for failing to do something do not appear in the record." *Id*.

This is not to say an appellant may never develop a sufficient record to claim ineffective assistance of counsel via direct appeal. The alleging party may develop a sufficient record through a motion for a new trial or other post-judgment motion that provides counsel with an opportunity to, for example, provide reasoning and guidance on trial strategy—which may or may not justify counsel's action or inaction. *Macias v. State*, 539 S.W.3d 410, 417 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). "Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392 (internal quotation marks omitted); *see also Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve.") (citation omitted).

*Analysis*

At trial, Limon's trial counsel pursued a strategy of false confession and an incomplete and incompetent law enforcement investigation. On appeal, Limon complains that there is no plausible basis for this strategy; rather, trial counsel's only reasonable strategy would have been to advocate that Limon killed Garcia in self-defense. The State, on the other hand, argues that trial counsel's chosen trial strategy was reasonable under the circumstances and that trial counsel provided Limon with competent counsel. Contrary to Limon's appellate arguments, the record does not firmly establish that counsel's strategy fell below an objective standard of reasonableness.

Even if the statutory bases for murder are satisfied, a killing may be justified if done in self-defense. *Braughton v. State*, 569 S.W.3d 592, 606 (Tex. Crim. App. 2018) ("The Texas Penal Code provides that deadly force used in self-defense or in defense of another is a defense to prosecution for murder if that use of force is 'justified.'"); TEX. PENAL CODE §§ 2.03, 9.02, 9.31–.33. Subject to certain exceptions, a person is justified in using force against another "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE § 9.31(a). "'Reasonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42). Despite an actor holding a reasonable belief, "use of force is not justified in response to verbal provocation alone, or if the actor provoked the other's use or attempted use of unlawful force." *Braughton*, 569 S.W.3d at 606; TEX. PENAL CODE § 9.31(b)(1), (4).

Specific to the use of force at issue here—deadly force—"[a] person is justified in using deadly force against another: (1) if the actor would be justified in using force against the other under Section 9.31; and (2) when and to the degree the actor reasonably believes the deadly force

is *immediately* necessary: (A) to protect the actor against the other's use or attempted use of unlawful deadly force; or (B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery." TEX. PENAL CODE § 9.32(a) (emphasis added). "The actor's belief that the deadly force was immediately necessary is presumed to be reasonable under certain circumstances, including that the actor 'knew or had reason to believe that the person against whom the deadly force was used' was committing or attempting to commit one of several enumerated serious felony offenses, and that the actor did not provoke the person against whom the force was used and was not otherwise engaged in criminal activity, other than a Class C misdemeanor traffic violation." *Braughton*, 569 S.W.3d at 607; TEX. PENAL CODE § 9.31(a)(1)–(3).

Here, the record reflects that after Garcia kicked the car door, Limon shot Garcia in the chest. Garcia then briefly ran down the street before collapsing. Despite the threat ending, Limon approached Garcia's body lying in the street and fired an additional shot, penetrating Garcia's head at close range. Limon, at the scene and in the interview at police headquarters, admitted to shooting Garcia multiple times. And, significantly, this version of events did not hinge solely on Limon's confession—as noted above, the State also presented Enciso's testimony that he saw a man, not a woman, shoot Garcia as he lay in the street. Trial counsel could have believed that the evidence did not support that Limon's use of deadly force was immediately necessary under the circumstances. *See* TEX. PENAL CODE § 9.32(a); *Braughton*, 569 S.W.3d at 608 ("This Court's precedent holds that, in a claim of self-defense . . . the defendant bears the burden to produce evidence supporting the defense, while the State bears the burden of persuasion to disprove the raised issues.").

No matter trial counsel's reason for choosing to forgo a self-defense theory of the case, the record supports a conclusion that there is "reasonably sound strategic motivation" for trial counsel's actions. *Lopez*, 343 S.W.3d at 143. Therefore, based on this record, we hold that trial counsel's decision to pursue a strategy of false confession, as opposed to a self-defense theory, did not render his assistance constitutionally ineffective. *See id.* at 142 ("In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation."); *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979) (explaining that a reviewing court should "not second-guess through hindsight the strategy of counsel at trial nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness"); *see, e.g.*, *Ramirez v. State*, No. 13-00-00708-CR, 2002 WL 1025500, at *3 (Tex. App.—Corpus Christi–Edinburg May 23, 2002, pet. ref'd) (mem. op., not designated for publication).

Limon additionally argues that, in general, his trial counsel was ineffective in the strategy he pursued. Namely, Limon's false confession and incomplete/incompetent law enforcement investigation theories. A complete review of the record reveals otherwise. Trial counsel's cross-examination of the State's witnesses shows an appreciation of the evidence and facts presented in the record in furtherance of a reasonable trial strategy. *Blott*, 588 S.W.2d at 592; *Lopez*, 343 S.W.3d at 142. Further, and as conceded by Limon, trial counsel's decision to request the jury disregard Enciso's identification of Limon as the shooter as opposed to moving for a mistrial, even assuming such a decision was erroneous, does not, in isolation, render counsel constitutionally ineffective. *See Harrington*, 562 U.S. at 105 ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."). Limon, like any defendant, is constitutionally entitled

to competent counsel and a fair trial—not perfect counsel in a mistake-free trial. *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980) ("A defendant's constitutional right to counsel, whether appointed or retained, does not mean errorless counsel. In order to render reasonably effective assistance of counsel, an attorney must acquaint himself not only with the law but also the facts of the case. A full inquiry into the strategy or tactics of counsel should be made only if from all appearances after trial, there is no plausible basis in strategy or tactics for his actions.") (internal citations omitted).

On this record, we conclude Limon did not establish that his trial counsel's performance fell below an objective standard of reasonableness. Therefore, because Limon has not shown that trial counsel's representation was deficient, we need not address the second *Strickland* element, prejudice. *See* TEX. R. APP. P. 47.1. We overrule Limon's sole appellate issue.

## CONCLUSION

We affirm the judgment of the trial court.

Lori I. Valenzuela, Justice

DO NOT PUBLISH